IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUPER-SERVER, LLC
d/b/a PROXIOS,

      Plaintiff,

v.                                                                         Civil Action No.: _3:21cv484_____

ELECTRICAL EQUIPMENT COMPANY, INC.
      Serve:    Julie G. Hill, Reg. Agent                    JURY TRIAL REQUESTED
              1807 Boulevard West
              Richmond, VA  23230
              (City of Richmond)

and

CAROLINAS IT, LLC
      Serve:    CT Corporation System
              Registered Agent
              160 Mine Lake Ct., Suite 200
              Raleigh, NC  27615

      Defendants.

## **COMPLAINT**

COMES NOW Plaintiff, Super-Server, LLC d/b/a Proxios ("Proxios"), by counsel, and as and for its Complaint against Defendants Electrical Equipment Company, Inc. ("EECO") and Carolinas IT, LLC ("Carolinas") (collectively "Defendants") respectfully states as follows:

## **PARTIES**

1.      Proxios is a Virginia company that provides information technology services which include hosting data on servers for customers, among other things.

2.      EECO is a North Carolina corporation that provides electrical equipment to its customers.

3.      Carolinas is a North Carolina company that provides information technology services which include hosting data on servers for customers, among other things.

## JURISDICTION AND VENUE

4.      Proxios has a principal place of business in Midlothian, Virginia and regularly engages in business in Virginia.

5.      Carolinas converted from a corporation to a limited liability company in 2019 and was actively engaged in business in Virginia during the events giving rise to this Complaint.

6.      Carolinas has its principal office in North Carolina.

7.      EECO has offices in Virginia and actively engages in business in Virginia.

8.      EECO has its principal office in North Carolina.

9.      Venue is proper in the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this Division and a substantial part of the property that is the subject of the action is situated in this Division.

10.      Pursuant to Section 15.9 of that certain Master Services Agreement ("Agreement") between EECO and Proxios, each agreed to be governed by the law of the Commonwealth of Virginia and submit to this Court for venue and jurisdiction regarding disputes and claims related to the Agreement. See attached **Exhibit 1**.

11.      This Court has subject matter jurisdiction over this dispute pursuant to federal question jurisdiction (18 U.S.C. § 1331) and diversity jurisdiction (18 U.S.C. § 1332).

## FACTS

12.      Proxios brings this suit to recover damages arising from the breach of the Agreement by EECO and the theft of its intellectual property by both EECO and Carolinas.

13.     Proxios is an information technology ("IT") company that serves in a variety of roles for its customers.

14.     Proxios and EECO entered into the Agreement for Proxios to provide to EECO the IT services described therein effective March 1, 2014.

15.     The initial term of the Agreement was for five years ("Term"). (**Exhibit 1** at § 14.1)

16.     In exchange for performing the services described in the Agreement, EECO was to pay Proxios on undisputed invoices within thirty (30) days of receipt. (**Exhibit 1** at § 8.6).

17.     Proxios has the right to "impose on any delinquent payment a fee equal to the lesser of 1.5% per month or the maximum percentage allowed under applicable law, and the Customer agrees to pay any such fee." (**Exhibit 1** at § 8.6)

18.     If EECO believed "in good faith that all or part of an invoice [was] erroneous, Customer [was to] notify Proxios in Writing within ten business (10) [sic] days of Customer's receipt of such invoice and [was to] detail the basis for the dispute." (**Exhibit 1** at § 8.6)

19.     The Agreement contains an automatic renewal provision which states "Ninety (90) days prior to the end of the Term, either party has the right to terminate this Agreement by providing written notification of its intent to cancel to the other party, otherwise this Agreement will automatically renew for a Renewal Term." (**Exhibit 1** at § 14.1)

20.     The end of the initial Term of this contract was February 28, 2019, a Thursday.

21.     Ninety (90) days prior to February 28, 2019 was November 30, 2018, a Friday.

22.     EECO did not give notice of termination of the Agreement prior to November 30, 2018.

23.     By its plain language, the Agreement renewed for a Renewal Term of three years on March 1, 2019. (**Exhibit 1** at § 14.1 and Exhibit A).

24.     Proxios continued to provide IT services to EECO through July 31, 2019.

25.     On July 31, 2019, EECO gave notice of purported termination of the Agreement via letter from its counsel.

26.     EECO had not previously given notice of any material breach in the Agreement as required under § 14.2 of the Agreement. (**Exhibit 1** at § 14.2.)

27.     EECO had not previously given Proxios notice of a 30-day period to cure any alleged material breach in the Agreement. In fact, EECO never gave notice of any breach as required by the Agreement. (**Exhibit 1** at § 14.2).

28.     The Renewal Term continues until February 28, 2022.

29.     Proxios has continued to bill EECO for services for each month that remained on the Renewal Term when EECO improperly terminated the Agreement.

30.     Proxios sends an invoice to EECO each month for $86,861.06, which is based on the average monthly value of the payments made by EECO in the last twelve months prior to EECO's improper termination of the Agreement.

31.     EECO has not paid any invoices since the July 2019 invoice in whole or in part.

32.     When the final invoice on the Renewal Term is sent, Proxios will be owed $2,692,692.86.

33.     Pursuant to the Agreement, EECO and Proxios had certain continuing obligations upon termination of the Agreement for any reason.

34.     One such obligation required EECO to "at [EECO's] expense, cause to be returned to Proxios all Proxios materials, hardware, equipment, software, manuals, or other materials provided by Proxios (and all copies thereof)." (**Exhibit 1** at § 14.4)

35.     In addition, EECO was required to "return to [Proxios] Confidential Information" which is a defined term in the Agreement. (**Exhibit 1** at § 14.4)

36.     "Confidential Information" in the Agreement means, among other things, "existing computer systems and systems architecture, including computer hardware, computer software, Source Code, object code, documentation, methods of processing and operational methods." (**Exhibit 1** at § 11.1)

37.     Neither party to the Agreement is permitted to "disclose the other's Confidential Information to any other Party without the express prior written consent of" the other party. (**Exhibit 1** at § 11.2)

38.     EECO also agreed to what Proxios owns and would retain ownership over as part of the Agreement in the following paragraph:

> [EECO] acknowledges and agrees that, as between the parties, Proxios is the owner or licensor of all the Proxios IP, including Standard Applications, the System Hardware, the System Software, and all intellectual property inherent therein, and that Customer receives no ownership rights therein. Customer agrees not to use, reproduce, duplicate, sell, distribute, transfer or otherwise exploit for commercial purposes any of the Applications or any other element of the system for any purpose other than as described in this Agreement.

(**Exhibit 1** at § 4.2).

39.     "Proxios IP" is defined in the Agreement to mean "(i) the software, processes and know-how involved in the creation, management and operation of the System including, without limitation, any network monitoring and reporting functionality associated therewith; (ii) related System Documentation including drawings, diagrams and System architecture documents; and (iii) lists of all Third Party Products used to provide the Services." (**Exhibit 1** at § 1.20)

40.     "Standard Applications" is defined in the Agreement as "all end-user software licensed by Proxios on behalf of Customer for use by Customer, which are identified as Standard Applications on Exhibit A attached to this Agreement." (**Exhibit 1** at § 1.22)

41.     "System Software" is defined in the Agreement as "software used to support and integrate the System Hardware and Hosted Hardware with the Customer Hardware, including Citrix and Terminal Services components." (**Exhibit 1** at § 1.28)

42.     Proxios spent thousands of hours developing the Proxios IP, including the processes, system software, system architecture, and operational capabilities of its server infrastructure.

43.     All of the efforts to make Proxios a competitive IT vendor capable of storing, configuring, and optimizing customer data, applications, and user interfaces are part of a build out process for each new customer that involves applying the unique Proxios Confidential Information and Proxios IP to a specific customer.

44.     EECO received access to the Proxios Confidential Information, which includes Proxios IP, during the Term and Renewal Term of the Agreement so that it would have an optimized, high-functioning cloud-based platform to use, add to, and access its data and programs.

45.     Proxios spent approximately 4,420 hours on-boarding, also known as building out, the cloud platform that EECO used to run all of its software and store its data from 2014 to the improper termination in 2019, a build-out that represents the application of Proxios Confidential Information and Proxios IP to configure the cloud platform to meet EECO's specific needs.

46.     The 4,420 hours related to EECO's build-out do not account for the approximately twenty years of effort and expertise Proxios has invested in designing the cloud platform, its standards, settings, configurations, and specifications.

47.     Proxios's twenty years of effort and expertise and its 4,420 hours of build-out work, its Confidential Information in the form of system architecture, storage architecture, software, and configurations, also known at Proxios IP, was copied over to the DR Site to allow continued function in the event of a compromise of the primary data center.

48.     Proxios was renting this Confidential Information and Proxios IP to EECO, and the Agreement makes clear that EECO never owned anything except its own data.

49.     EECO should have, when exiting the Proxios environment, had to rebuild its server, active directory, operating system, system applications, all user accounts for all applications, configured all operating systems, applications, and data, and exported all data for each user for each application, plus testing and security set up for each of these processes, among other things. This activity is called build out and migration in the industry.

50.     The build out and migration process is time consuming, requires skills and training to do successfully, and is uniquely managed by information technology companies to optimize service to customers.

51.     At least as early as April 2019, EECO initiated plans to wrongfully terminate the Agreement with Proxios.

52.     In the Spring of 2019, EECO engaged Carolinas, a competitor to Proxios, to replace Proxios and started the process of shifting services to Carolinas.

53.     At this time, EECO represented to Proxios that it was negotiating in good faith for an amendment to the existing Agreement.

54.     EECO asked Proxios to set up a disaster recovery site ("DR Site") on April 30, 2019.

55. The DR Site was a mirror image of the software and data that was operating or being used on the primary server/computer infrastructure provided by Proxios for the benefit of EECO under the Agreement. The DR Site was updated in near real time and was meant to allow nearly seamless transition for EECO users to the Carolinas-controlled server infrastructure/computer at the DR Site only in the event of a disaster that destroyed or in some way compromised the primary server infrastructure run by Proxios.

56. As such, the DR Site included all of Proxios's Confidential Information, such as systems architecture, computer software, Source Code, object code, documentation, methods of processing and operational methods which optimized and configured all of the interactions between EECO's data, and the System Software, Standard Applications, and Hosted Applications, as those terms are defined in the Agreement.

57. The Confidential Information included the Proxios IP as defined in the Agreement.

58. The Proxios IP embedded in the software or otherwise residing on the primary servers provided for EECO was mirrored in near real time onto the DR Site hardware, including, but not limited to, software, processes and know-how involved in the creation, management and operation of the System including, without limitation, any network monitoring and reporting functionality associated therewith.

59. At the time of the improper termination of the Agreement, EECO worked with Carolinas to retain all of Proxios's Confidential Information and Proxios IP that went into creating EECO's digital environment by turning off the primary cloud platform run by Proxios, disconnecting Proxios as an administrator of the software EECO was using and making Carolinas the administrator of the completely mirrored DR Site.

60. This conversion of Proxios's property occurred at the end of July 2019.

61.     EECO admitted via phone call on July 1, 2019, from its employee, Rod Vieiradarosa, Director of IT Operations and Infrastructure at EECO, with Patrick Butler, a Proxios employee, that EECO intended to act in concert with Carolinas to use the DR Site to improperly terminate the Agreement and switch to Carolinas as EECO's IT vendor, regardless of what the Agreement said.

62.     Mr. Vieiradarosa would not set a date for the proposed termination and refused to comment on why EECO had been leading Proxios to believe that it would sign an amendment to the Agreement for several months, when EECO's plan had been to attempt to terminate the Agreement and switch to Carolinas.

63.     EECO and Carolinas developed a plan to take all the work, intellectual property, Confidential Information and Proxios IP that Proxios had developed and implemented for EECO since March 2014 by converting the DR Site at the end of July 2019.

64.     EECO and Carolinas are still, as of this writing, benefiting from the conversion and use of Proxios IP and Confidential Information.

**Count I**
**Breach of Contract**
**(EECO)**

65.     The foregoing paragraphs are re-alleged herein.

66.     Proxios provided EECO with IT services from March 1, 2014 to the end of July 2019, when EECO improperly terminated the Agreement.

67.     The Agreement automatically renewed by its plain language when not canceled by November 30, 2018.

68.     EECO breached the Agreement by improperly terminating it on July 31, 2019, and refusing to make payment to Proxios thereafter for the remainder of the Renewal Term.

69.     Proxios has suffered damages as a result of EECO's breach in the form of lost revenue in an amount at least equal to the trailing twelve months of average revenue, which amounts to $86,861.06 per month, for the remaining thirty-one months of the Agreement.

70.     The total Proxios damages accruing until the full Renewal Term is complete on February 28, 2022 will be $2,692,692.00.

71.     Proxios respectfully asks this Court to award damages of $2,084,665.44 for the breach of contract related to the improper and premature termination of the Agreement, limited by the limitation of damages clause in the Agreement, plus interest as provided for in the Agreement or by statute.  (**Exhibit 1** at § 12.4)

72.     EECO also breached the Agreement by failing to return Proxios's Confidential Information.

73.     EECO also breached the Agreement by taking Proxios's intellectual property when it improperly terminated the Agreement without properly migrating its data from the Proxios digital environment to newly built out servers.

74.     Proxios has suffered damages of at least $773,631.25 for the breach of the Agreement related to the retention and use by EECO of the Proxios Confidential Information and Proxios IP and the taking of its intellectual property.

75.     Proxios respectfully requests $773,631.25 in additional and independent damages from EECO for this additional breach of the Agreement, which is excepted from the limitation of damages clause in the Agreement.  (**Exhibit 1** at § 12.5)

### Count II
### Tortious Interference with a Contract
### (Carolinas)

76.     The foregoing paragraphs are re-alleged herein.

77.     Carolinas was aware since at least April of 2019 that EECO had an existing contract, the Agreement, with Proxios for IT services.

78.     Carolinas planned and advised EECO on the best method of attempting to terminate the Agreement while retaining benefit and value of all the work Proxios had performed over the previous five plus years as well as the Confidential Information and Proxios IP.

79.     Carolinas helped EECO craft and implement the plan to convert the Confidential Information of Proxios and the Proxios IP via the creation and use of the DR Site.

80.     Carolinas actions constitute improper means and intent to willfully cause the breach of a contract, causing damages to Proxios.

81.     Proxios has suffered damages at least equal to the preceding twelve months of average revenue, which amounts to $86,861.06 per month, for the remaining thirty-one months of the Agreement.

82.     The total Proxios damages accruing until the full Renewal Term is complete on February 28, 2022, will be $2,692,692.00.

83.     Proxios respectfully asks this Court to award damages of $2,692,692.00 against Carolinas for causing the improper, premature termination and breach of the Agreement.

84.     Carolinas also interfered with the Agreement by helping EECO retain and use Proxios's IP and Confidential Information after the improper termination of the Agreement by use of the DR Site instead of exporting or migrating EECO's data from the Proxios digital environment. By doing so, Carolinas avoided the usual labor- and cost-intensive onboarding and optimization process typical in the industry when a vendor like Carolinas establishes operations for a new customer like EECO.

85.     Carolinas also interfered with the Agreement by helping EECO convert Proxios's Confidential Information and Proxios IP in breach of the Agreement.

86.     The method that Carolinas employed to convert Proxios's Confidential Information and Proxios IP is also a violation of the Virginia Computer Crimes Act and the allegations of that Count from this complaint are incorporated herein by reference.

87.     Proxios has suffered damages of at least $773,631.25 resulting from Carolina's tortious interference with the Agreement related to the improper retention and use of the Proxios Confidential Information and taking of its intellectual property.

88.     Proxios respectfully requests $773,631.25 in additional damages from Carolinas for causing the improper taking of Proxios Confidential Information and intellectual property.

89.     The actions taken by Carolinas as set forth herein were wanton, willful malicious, and intentional with complete disregard for the rights of Proxios, entitling Proxios to additional award of punitive damages in the amount of $350,000.

**Count III**
**Violation of Virginia Computer Crimes Act ("VCCA"), Va. Code Ann. § 18.2-152.1, *et seq*.**
**(EECO and Carolinas)**

90.     The foregoing paragraphs are re-alleged herein.

91.     Proxios had software, programs, data, designs, configurations, the Proxios IP, and Confidential Information on a computer and computers as defined by the Va. Code Ann. § 18.2-152.2 in the form of the DR Site servers.

92.     Proxios IP and Confidential Information is defined by the VCCA as "Property" in Va. Code Ann. § 18.2-152.2 as it is "computer data, computer programs, computer software" and "in a format readable by humans or by a computer."

93.    Defendants knew or reasonably should have known that they did not have the right or permission to take possession and control of the Proxios IP and the Confidential Information upon the improper termination of the Agreement but did so regardless of Proxios's property rights therein under the Agreement.

94.    Defendants' act of using a computer to convert the Proxios IP and Confidential Information without authority do so constituted obtaining of property by false pretenses and the conversion of property owned by and of substantial value to Proxios and is therefore computer fraud as set forth in Va. Code Ann. § 18.2-152.3.

95.    Defendants intentionally used a computer or computer network to make an unauthorized copy of Proxios's computer data, computer programs, and computer software that resided on a computer or computer network (the DR Site servers), in violation of Va. Code Ann. § 18.2-152.4(6).

96.    Proxios is authorized pursuant to Va. Code Ann. § 18.2-152.12(A) to bring suit for damages sustained for Defendants' violation of Va. Code Ann. § 18.2-152.4 and the costs of suit.

97.    Proxios requests damages in the amount of $773,631.25 for the violation of the Virginia Computer Trespass Act committed by each Defendant.

98.    Proxios also respectfully requests an award of its attorneys' fees and costs incurred in bringing this action as permitted by Va. Code Ann. § 18.2-152.12

**Count IV**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. 1831 *et seq*.**
**(EECO and Carolinas)**

99.    The foregoing paragraphs are re-alleged herein.

100.     Proxios IP and Confidential Information are part of both a product and service that is used in interstate commerce. For example, Proxios has current and former customers, including EECO, in jurisdictions outside Virginia.

101.     Proxios has taken commercially reasonable steps to keep Proxios IP and Confidential Information along with all of the elements of its cloud platform confidential, including, but without limitation, requiring those who have access to such property and information to promise to return them at the conclusion of service.

102.     The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

103.     Proxios has not made any of the Proxios IP or Confidential Information publicly available.

104.     The Defend Trade Secrets Act defines a trade secret as

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

**(A)** the owner thereof has taken reasonable measures to keep such information secret; and

**(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

105.     Proxios IP, Confidential Information, and the configurations it has developed to create a cloud platform and working systems that meet specific business needs for customers like EECO are trade secrets as that term is defined in the federal Defend Trade Secrets Act.

106.     EECO and Carolinas willfully and maliciously misappropriated trade secrets that belong to Proxios by retaining the Proxios IP and Confidential Information for their own use.

107.     Proxios has suffered damage from the taking of its trade secrets by its competitor, Carolinas, and customer, EECO.

108.     Proxios is entitled to damages in the form of the actual loss from the twenty years of effort and expertise invested in the trade secrets developed to make Proxios a competitor in the information technology industry (18 U.S.C. § 1836(b)(3)(B)(i)(I)) and unjust enrichment for the value taken and retained by both Defendants (18 U.S.C.§ 1836(b)(3)(B)(i)(II)).

109.     In the alternative, as provided by statute, Proxios is entitled to recover as damages a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret pursuant to 18 U.S.C.§ 1836(b)(3)(B)(ii).

110.     Because the trade secrets owned by Proxios were willfully and maliciously misappropriated, Proxios respectfully requests that this Court award two times the amount of damages awarded for the actual loss of the trade secrets to a competitor and customer, plus the unjust enrichment to the Defendants, as permitted by 18 U.S.C. § 1836(b)(3)(C).

111.     Because the trade secrets owned by Proxios were willfully and maliciously misappropriated, Proxios is entitled to reasonable attorney fees incurred in pursuing this action as permitted by 18 U.S.C.§ 1836(b)(3)(D).

112.     The damages from the loss of trade secrets by Proxios is $773,631.25.

113.    The unjust enrichment to the Defendants will be determined in discovery, but is not less than $1,000,000.00.

114.    The alternative reasonably royalty damages will be determined in discovery, but are not less than $1,000,000.00

**Count V**
**Conversion**
**(EECO and Carolinas)**

115.    The foregoing paragraphs are re-alleged herein.

116.    The Defendants exerted the wrongful exercise or assumption of authority over the trade secrets and intellectual property which was owned by Proxios as described above.

117.    The Defendants' taking of Proxios IP and Confidential Information when they kept the system mirrored to the DR Site without permission or authority is inconsistent with Proxios's exclusive ownership rights of the Proxios IP and Confidential Information.

118.    The value of conversion damages under Virginia law is the value of the property converted at the time and place of conversion.

119.    Defendants have converted Proxios property and should be required to pay damages equal to the value of that which they converted in amount to be proven at trial, but not less than $773,631.25, which represents a minimum value of the time value in skilled labor to build out the EECO cloud platform, plus at least $1,000,000 in value that represents the expertise, time, and effort involved in creating the cloud platform architecture which EECO and Carolinas exerted unauthorized control over and have confiscated by their act of conversion.

120.    Defendants acted with willful and malicious intent in converting the Proxios IP and Confidential Information and therefore Proxios respectfully requests that this Court impose punitive damages of $350,000.

**Count VI**
**Violation of the Virginia Uniform Trade Secrets Act ("VUTSA")**
**(EECO and Carolinas)**

121.    The foregoing paragraphs are re-alleged herein.

122.    Proxios IP, Confidential Information, and system configurations have independent economic value from not being generally known or ascertainable by those who would gain economic value from their disclosure or use because they allow for cloud hosting and optimization of programs, end user experiences, and data storage.

123.    Proxios keeps Proxios IP, Confidential Information, and system configurations secret from the public by engaging in commercially reasonably methods of securing them, such as storing them on secure servers and making customers like EECO promise to return them at the end of their service contracts.

124.    As such, Proxios IP, Confidential Information, and system configurations are trade secrets within the definition of such under the VUTSA.  Va. Code Ann. § 59.1-336.

125.    Defendants misappropriated Proxios's trade secrets by retaining the Proxios IP and Confidential Information for their own use.

126.    Proxios is entitled to recover as damages both the actual loss of the misappropriated trade secrets plus the value of the unjust enrichment to both Defendants and therefore seeks an amount to be proven at trial, but not less than $1,773,631.25.

127.    In the alternative, should Proxios not be able to establish the value of the loss of the trade secrets and the unjust enrichment value to one or both Defendants, then Proxios is entitled to damages in the amount of a reasonable royalty from the Defendants' use of the trade secrets pursuant to Va. Code Ann. § 59.1-338(A), which is not less than $1,000,000.00.

128.     Defendants acted willfully and maliciously in their misappropriation of the trade secrets and therefore Proxios respectfully asks that this Court award punitive damages in an amount not to exceed twice any award of actual damages or $350,000, whichever amount is less pursuant to Va. Code Ann. § 59.1-338(B).

129.     Proxios also respectfully requests an award of reasonable attorney fees as provided for in Va. Code Ann. §59.1-338.1 because the pre-mediated means by which Defendants plotted to convert the trade secrets while leading Proxios to believe that they were negotiating and performing in good faith constitutes bad faith, and willful and malicious misappropriation.

**COUNT VII**
**Common Law Civil Conspiracy/Statutory Business Conspiracy**
**Va. Code Ann. §§ 18.2-499, -500**
**(EECO and Carolinas)**

130.     The foregoing paragraphs are re-alleged herein.

131.     The Defendants have combined, associated, agreed, mutually undertaken, and acted in concert as described herein for the unlawful purpose of converting and misappropriating Proxios's property, and otherwise injuring Proxios.

132.     The Defendants have further combined, associated, agreed, mutually undertaken, and acted in concert to willfully and maliciously injure Proxios in its reputation, trade, business, or profession by the aforementioned unlawful means, including tortious interference with a contract, conversion, violation of the Virginia Computer Crimes Act, violation of the Federal Defend Trade Secrets Act, and violation of the Virginia Uniform Trade Secrets Act.

133.     Since their plans began in April 2019, the Defendants have at all times acted knowingly, intentionally, willfully, fraudulently, maliciously, and in bad faith, by pretending to negotiate new terms with Proxios while planning to switch over to the DR Site and shut out Proxios as soon as they were able to do so.

134.     Proxios is entitled to, and hereby requests, that the Court award injunctive and other equitable and statutory relief as appropriate, and that the Court award compensatory damages in an amount to be determined at trial of at least $3,466,323.25, punitive damages of $350,000.00, and treble damages in an amount to be determined at trial of at least $10,398,969.80.

WHEREFORE, Proxios respectfully requests that this Court award the following relief:

A.     Damages for Count I, breach of contract, against EECO in the amount of $2,084,665.44 for the premature and improper termination of the Agreement plus interest at 1.5% per month on the damages from Count I, and, independently, $773,631.25 for the taking of Proxios IP and Confidential Information;

B.      Damages for Count II, tortious interference with a contract, against Carolinas in the amount of $2,692,692.00 for tortiously interfering with the Renewal Term of the Agreement and, independently, $773,631.25 for the taking of Proxios IP and Confidential Information, plus punitive damages in the amount of $350,000.00;

C.     Damages for Count III, violation of Virginia Computer Crimes Act, against EECO and Carolinas, jointly and severally, in the amount of $773,631.25, plus attorney fees and costs incurred in bringing this claim as provided for by Va. Code Ann. § 18.2-152.12;

D.     Damages for Count IV, violation of the Defend Trade Secrets Act, against EECO and Carolinas, jointly and severally, in the amount of $773,631.25 for actual loss pursuant to 18 U.S.C. § 1836(b)(3)(B)(i)(I) plus $1,000,000.00 pursuant to 18 U.S.C.§ 1836(b)(3)(B)(i)(II) for the unlawful taking of trade secrets and unjust enrichment therefrom, plus costs and reasonable attorney fees incurred in bringing this claim;

E.     Damages for Count IV, violation of the Defend Trade Secrets Act, against EECO and Carolinas, jointly and severally, should be doubled from whatever the Court deems

appropriate at trial and therefore Proxios respectfully requests damages in the amount of $3,547,262.50.

F.      Damages for Count IV, violation of the Defend Trade Secrets Act, against EECO and Carolinas, jointly and severally, of not less than $1,000,000.00, which, when doubled, amount to $2,000,000.00 if the Court determines that it should apply the alternative measure of recovery allowed for in the Defend Trade Secrets Act pursuant to 18 U.S.C.§ 1836(b)(3)(B)(ii);

G.      Damages for Count V, Conversion, against EECO and Carolinas, jointly and severally, in the amount of $1,773,631.25 plus punitive damages of $350,000.00;

H.      Damages for Count VI, Violation of the Virginia Uniform Trade Secrets Act, against EECO and Carolinas, jointly and severally, in the amount of $1,773,631.25 plus punitive damages of $350,000.00 and attorney fees and costs incurred in bringing this claim pursuant to Va. Code Ann. § 59.1-338(A) and (B);

I.      Damages for Count VII, business conspiracy, against EECO and Carolinas, jointly and severally, in the amount of $3,466,323.25, which should be trebled to $10,398,969.80, punitive damages of $350,000.00 pursuant to Va. Code Ann. § 18.2-500(A);

J.      Injunctive relief in the form of an order requiring EECO and Carolinas to demonstrate that they have returned all Proxios IP and Confidential Information and ceased its use in any form;

K.      Such other relief as the Court deems just and proper.

L.      Plaintiff respectfully requests a jury trial.

Respectfully submitted,

SUPER-SERVER, LLC d/b/a PROXIOS

By Counsel

/s/ J. Buckley Warden IV
J. Buckley Warden IV, Esq. (VSB No. 79183)
John P. O'Herron, Esq. (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 916-6597
Facsimile: (804) 780-1813
bwarden@t-mlaw.com
joherron@t-mlaw.com
*Counsel for Proxios*